BRENT J. NEWELL, California Bar No. 210,312
LUKE W. COLE, California Bar No. 145,505
Center on Race, Poverty & the Environment
450 Geary Street, Suite 500
San Francisco, CA 94102
(415) 346-4179
(415) 346-8723 fax

CAROLINE FARRELL, California Bar No. 202,871
Center on Race, Poverty & the Environment
1224 Jefferson Street, Suite 25
Delano, CA 93215
(661) 720-9140
(661) 720-9483 fax

Attorneys for Plaintiffs

# IN THE U.S. DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS, an unincorporated association, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| FRED SCHAKEL DAIRY, a California Proprietorship, FRED SCHAKEL, owner and operator, and SCHAKEL FAMILY PARTNERSHIP, a California Limited Partnership, owner and operator, | **JURY TRIAL DEMANDED** |
| Defendants, | |

## INTRODUCTION

1. Association of Irritated Residents ("AIR") brings this action to enforce the New Source Review requirements in the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*, and the California State Implementation Plan ("SIP"). Fred Schakel Dairy, Fred Schakel, and Schakel Family Partnership (collectively "Schakel") have violated and continue to violate the Clean Air Act by constructing a major stationary source without a New Source Review permit and the attendant pollution limitations and procedural safeguards required by Part D of Title I of the Clean Air Act. Several members of AIR, as residents of Tulare and Kern County, live near or downwind of the Fred Schakel Dairy and are directly and negatively affected by the violations. AIR seeks a temporary restraining order, a preliminary injunction, a permanent injunction, declaratory relief, civil penalties, environmental remediation, and attorneys fees and costs of litigation to remedy Schakel's violations of the Act. Without an order from this Court requiring compliance with the Act, Schakel will emit significant, unabated quantities of smog-forming volatile organic compounds ("VOC"), contribute to the San Joaquin Valley's smog-caused public health crisis, irreparably harm AIR members, and place other law-abiding dairies at a competitive disadvantage.

2. The San Joaquin Valley has a significant smog (low-level ozone) pollution problem. The Valley violates the federal 1-hour ozone National Ambient Air Quality Standard more times than any other air basin, except Los Angeles. The American Lung Association ranks the San Joaquin Valley counties of Kern, Fresno, Tulare, and Merced as the 2nd, 3rd, 5th, and 7th most ozone-polluted counties in the United States, respectively. American Lung Association, STATE OF THE AIR: 2005 at Table 3b. The Valley also violates the 8-hour ozone standard on more days than all other air basins in the United States.

3. A photochemical reaction between VOC and oxides of nitrogen forms ozone. Ozone pollution damages lung tissue, exacerbates and causes asthma, reduces lung capacity, increases respiratory and cardiovascular hospital admissions, increases school and work absenteeism, and recent research shows that short-term exposure to ozone kills.

4. A document prepared jointly by the California Air Resources Board and the

COMPLAINT    1

American Lung Association describes ozone as

> a powerful oxidant that can damage the respiratory tract, causing inflammation and irritation, and induces symptoms such as coughing, chest tightness, shortness of breath, and worsening of asthma symptoms. Ozone in sufficient doses increases the permeability of lung cells, rendering them more susceptible to toxins and microorganisms. The greatest risk is to those who are more active outdoors during smoggy periods, such as children, athletes, and outdoor workers. Exposure to levels of ozone above the current ambient air quality standard leads to lung inflammation and lung tissue damage, and a reduction in the amount of air inhaled into the lungs. Recent evidence has, for the first time, linked the onset of asthma to exposure of elevated ozone levels in exercising children (McConnell 2002). These levels of ozone also reduce crop and timber yields, damage native plants, and damage materials such as rubber, paints, fabric, and plastics.

The California Air Resources Board and the American Lung Association of California, RECENT RESEARCH FINDINGS: HEALTH EFFECTS OF PARTICULATE MATTER AND OZONE AIR POLLUTION, January 2004 at 2.

5. Schakel emits volatile organic compounds from manure decomposition, enteric processes (cow digestion) and feed decomposition.

6. Schakel has violated, and continues to violate, the Clean Air Act's New Source Review provisions because Schakel has begun actual construction of a major stationary source without obtaining a New Source Review permit, without installing Best Available Control Technology, without purchasing emission reduction credits to offset Schakel's VOC emissions, and without certain procedural safeguards as required by the Act.

7. Schakel has also violated San Joaquin Valley Unified Air Pollution Control District Rule 2010 and 2201 by constructing the dairy facility without an authority to construct permit. Concurrent with the filing of this action, AIR has sent a 60-day notice of intent to sue Schakel for these violations of U.S. Environmental Protection Agency-approved State Implementation Plan. AIR will amend this Complaint upon the expiration of that period to include those claims alleging violations of emission standards and limitations.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 7604(a) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Clean Air Act does not require as 60-day notice for actions brought under

1  section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3).  *See* 42 U.S.C. § 7604(b) (notice required
2  for actions brought under sections 304(a)(1) and 304(a)(2)).

3      10.    The relief AIR requests is authorized by 28 U.S.C. §§ 2201(a) and 2202, and 42
4  U.S.C. § 7604.

5      11.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is an
6  action brought under federal question jurisdiction and the events giving rise to the claims in this
7  citizen suit occurred in Tulare County.  Assignment to the Fresno Division of this Court is proper
8  under Civil Local Rule 3-120(d) because the claims in this citizen suit occurred in Tulare
9  County.

**PARTIES**

11      12.    Plaintiff ASSOCIATION OF IRRITATED RESIDENTS is an unincorporated
12  association that advocates for air quality and environmental health in the San Joaquin Valley.
13  Members reside in Kern, Tulare, and Stanislaus counties.

14      13.    AIR is a "person" within the meaning of section 302(e) of the Act, 42 U.S.C. §
15  7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

16      14.    AIR members live, raise their families, work, teach, recreate, own property, raise
17  crops, and breathe in the San Joaquin Valley Air Basin.  AIR members live downwind in the
18  small, rural communities of Alpaugh and Earlimart, 7 miles southwest and 11 miles southeast of
19  the Fred Schakel Dairy, respectively.  AIR members also live in the downwind Kern County
20  communities of Shafter, Bakersfield, and Lebec.  VOC emissions from the Fred Schakel Dairy
21  will react with oxides of nitrogen to form smog.  Smog levels that exceed the one-hour and
22  eight-hour National Ambient Air Quality Standards for ground-level ozone adversely affect AIR
23  members.  These adverse effects include lung damage, exacerbated respiratory disease, and
24  perceived threats to their health, the health of their children, neighbors, and students.  AIR
25  members' aesthetic enjoyment of the environment in the San Joaquin Valley and Sierra Nevada
26  Mountains is also harmed by smoggy skies which diminishes visibility.

27      15.    Schakel's on-going violations of the Clean Air Act have injured and continue to
28  injure AIR members.  The relief requested in this lawsuit would remedy members' injuries by

preventing emissions of smog-forming VOC, reducing VOC emissions in the air basin through the purchase of emission reduction credits, and ensuring a meaningful alternatives analysis, thus improving air quality in the San Joaquin Valley Air Basin.

16. FRED SCHAKEL and SCHAKEL FAMILY PARTNERSHIP, L.P. own and operate the FRED SCHAKEL DAIRY. Fred Schakel resides in Chino, California where he owns and operates Fred Schakel Dairy #2 at 5815 Sumner Avenue. Fred Schakel is the agent for service of process of the Schakel Family Partnership, L.P., which also resides in Chino, California.

17. The Fred Schakel Dairy is located in Tulare County, California and lies east of State Highway 43, between Avenue 84 and Avenue 112, approximately seven miles northeast of Alpaugh, eight miles west of Pixley, and eleven miles northwest of Earlimart. The dairy occupies Tulare County Assessor Parcel Numbers (APN) 293-200-01, 02, 03, 04, 06, 09; 293-220-01, 02, 03, 04, 05; 293-240-02; 311-030-11, 20, 21, 24, 25, 26, 29; and 311-040-20 and 22.

18. Pursuant to section 302(e) of the Act, 42 U.S.C. § 7602(e), Schakel is a "person" against whom a civil action may be brought under section 304(a) of the Act, 42 U.S.C. § 7604(a).

**FACTS**

19. The general purpose of the Clean Air Act, as adopted in 1970 and amended in 1977 and 1990, is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

20. To further this purpose, the Act requires the U.S. Environmental Protection Agency ("EPA) to set National Ambient Air Quality Standards ("NAAQS") for certain air pollutants, including ozone, that threaten public health and welfare. 42 U.S.C. § 7409.

21. The EPA has established NAAQS for seven "criteria pollutants," including ozone. 40 C.F.R. part 50.

22. The EPA set the one-hour NAAQS for ozone at 0.12 parts per million by volume, a level sufficient to protect human health with an adequate margin of safety. An area complies with the 1-hour ozone standard when measured ozone levels do not exceed 0.12 parts per million by volume at any monitoring station in the area on more than one day per year over any three

1  year period.  40 C.F.R. § 50.9.

2      23.    EPA set the eight-hour ozone standard at 0.08 parts per million measured over the
3  daily maximum eight-hour average.  40 C.F.R. § 50.10.

4      24.    Under section 107(d) of the Act, 42 U.S.C. § 7407(d), each state must designate
5  those areas within its boundaries where the air quality is better or worse than the NAAQS for
6  each criteria pollutant, or where the air quality cannot be classified because of insufficient data.
7  An area that meets the NAAQS for a particular criteria pollutant is an "attainment" area for that
8  pollutant.  An area that does not meet the NAAQS for a particular criteria pollutant is a
9  "nonattainment" area for that pollutant.  An area that cannot be classified for a particular criteria
10  pollutant is "unclassifiable" for that pollutant.

11      25.    The Clean Air Act divides ozone nonattainment areas into "marginal," "moderate,"
12  "serious," "severe," and "extreme" based on the severity of the ozone pollution problem.  42
13  U.S.C. § 7511.

14      26.    The San Joaquin Valley Air Basin includes all of San Joaquin, Stanislaus, Merced,
15  Madera, Fresno, Kings, Tulare, and the valley portions of Kern County, as defined by San
16  Joaquin Valley Unified Air Pollution Control District Rule 1020 § 3.44.

17      27.    The San Joaquin Valley Air Basin was designated a "serious" nonattainment area
18  by operation of law on November 15, 1990, the effective date of the 1990 Clean Air Act
19  Amendments.

20      28.    The San Joaquin Valley Air Basin failed to attain the one-hour ozone standard by
21  the serious area December 31, 1999 deadline, and was designated a "severe" nonattainment area
22  by operation of law.

23      29.    In December 2003, the San Joaquin Valley Unified Air Pollution Control District
24  ("District") voluntarily sought, and EPA subsequently approved, reclassification to an "extreme"
25  ozone nonattainment area for the 1-hour ozone NAAQS as allowed by 42 U.S.C. § 7511(b)(3).

26      30.    On April 15, 2004, EPA designated the San Joaquin Valley Air Basin as a serious
27  nonattainment area for the 8-hour ozone NAAQS.

28      31.    The Clean Air Act, as amended in 1990, requires states with nonattainment areas to

COMPLAINT     5

adopt implementation plans to achieve the National Ambient Air Quality Standards by the applicable attainment dates under the Act. 42 U.S.C. § 7410. The collection of plans and rules designed to attain the various NAAQS are referred to collectively as the State Implementation Plan ("SIP").

32. The Clean Air Act requires that a SIP "shall require permits for the construction and operation of new or modified major stationary sources anywhere in the nonattainment area." 42 U.S.C. § 7502(c)(5). This pre-construction permit program is called "New Source Review."

33. SIP provisions must satisfy the requirements of the Act before EPA can approve a state's SIP submission. 42 U.S.C. § 7410(k); 40 C.F.R. § 51.165 (NSR requirements).

34. A New Source Review permit may be issued only after several conditions have been met, including compliance with the lowest achievable emission rate, a demonstration that all major stationary sources owned and operated by the applicant are in compliance with the Act, the state is lawfully implementing the provisions of the Act, and "an analysis of alternative sites, sizes, production processes, and environmental control techniques for such proposed source demonstrates that benefits of the proposed source significantly outweigh the environmental and social costs imposed as a result of its location, construction, or modification." 42 U.S.C. § 7503(a). A major stationary source must also purchase "offsets" or "emission reduction credits" from other sources in the same nonattainment area, in a ratio determined by the severity of the air pollution problem. 42 U.S.C. §§ 7503(c), 7511a.

35. The District adopted Rule 2201 to implement the New Source Review program on September 19, 1991. The District has amended the rule several times, most recently on December 19, 2002. Rule 2201 requires a new or modified stationary source of air pollution or emissions unit to install Best Available Control Technology when the potential to emit VOC exceed 2 pounds per day. Rule 2201 § 4.1. Rule 2201 requires a new or modified stationary source of pollution to purchase "offsets" or "emission reduction credits" for VOC when the source's potential to emit exceeds 10 tons per year. Rule 2201, § 4.5. Rule 2201 requires alternative siting analysis and prohibits a new or modified major stationary source from causing or making worse the violation of an ambient air quality standard. Rule 2201, § 4.12. EPA

approved Rule 2201 as part of the State Implementation Plan. 68 Fed. Reg. 7330 (Feb. 13, 2003); 69 Fed. Reg. 27837 (May 17, 2004); 40 C.F.R. § 52.220(c)(311)(i)(B)

36. Until December 19, 2002, District Rule 2020 § 4.1 exempted "agricultural equipment" from Rule 2201. EPA disapproved that portion of Rule 2020 on July 19, 2001. 65 Fed. Reg. 58252, 58254 (September 28, 2000) (proposed rule); 66 Fed. Reg. 37587 (July 19, 2001) (final rule). The District amended Rule 2020 on December 19, 2002 to remove the exemption. EPA approved the amendment as part of the State Implementation Plan. 68 Fed. Reg. 7330 (Feb. 13, 2003); 69 Fed. Reg. 27837 (May 17, 2004).

37. Former California Health & Safety Code § 42310(e) exempted "any equipment used in agricultural operations in the growing of crops or the raising of fowl or animals" from the obligation to obtain a permit. Health & Safety Code § 42310(e) (2003).

38. On June 25, 2003, EPA published a final rule finding that the California SIP was substantially inadequate because former Health & Safety Code § 42310(e) "exempts major agricultural stationary sources from [NSR permit requirements]." 68 Fed. Reg 37746, 37747 (June 25, 2003) (final rule); 68 Fed. Reg. 7327 (Feb. 13, 2003) (proposed rule). "As a result, the State and districts cannot issue permits to these agricultural sources, even if they are major stationary sources under the Act. The [Clean Air Act] NSR and [Prevention of Significant Deterioration] permitting requirements do not provide for this exemption." *Id*.

39. On January 1, 2004, California Senate Bill 700 (Florez) took effect, removing the agricultural exemption from Health & Safety Code § 42310(e), thus allowing the state and districts to issue permits to agricultural sources.

40. The Clean Air Act has *never* exempted agricultural stationary sources from the obligation to comply with any provision of the Act.

41. On December 17, 2003, Fred Schakel and Schakel Family Partnership, L.P. obtained approval for a special use permit from the Tulare County Planning Commission. On December 18, 2004, Schakel recorded an acceptance of the conditions of approval with the Tulare County Recorder, agreeing to comply with the terms of the use permit, including Senate Bill 700. The special use permit limits the dairy herd to a maximum 5,832 Holstein milk cows,

COMPLAINT                                        7

plus 5,058 "support stock," which are non-lactating cows (dry cows) and heifers (female Holsteins one year and older, but not lactating).

42. Schakel obtained building permits for the Fred Schakel Dairy on January 6, 2004, with the exception of the building permit for the manure separator pit, which Schakel obtained on November 1, 2004. Schakel began actual construction on or after January 6, 2004.

43. Schakel has begun to construct the Fred Schakel Dairy to achieve its maximum operational capacity. Schakel has constructed, or is in the process of constructing, all eight freestall barns, all four manure solid separation lagoons, both liquid manure storage lagoons, all planned corrals with flushed alleys for support stock, a dairy barn (milking barn), and feed storage facilities. These components comprise the dairy facility and are collectively a stationary source within the meaning of the Clean Air Act and District Rule 2201.

44. "Begin actual construction" includes, but is not limited to, "installation of building supports and foundations, laying of underground pipework, and construction of permanent storage structures." 40 C.F.R. § (a)(1)(xv).

45. The Fred Schakel Dairy is designed to contain a maximum 5,832 Holstein milk cows plus 5,058 support stock, as limited by the special use permit. The California Regional Water Quality Control Board, Central Valley Region animal unit system converts dairy cattle to the equivalent of a 1,000 pound cow so that one Holstein milk cow equals 1.4 animal units, a dry cow equals 1.12 animal units, and a heifer greater than 1 year old equals 1.02 animal units. Total milk cow animal units, as converted by California Regional Water Quality Control Board, Central Valley Region's Fact Sheet #4, are 8,164.8. The corrals are designed to contain 5,058 dry cows and heifers. Total dry cow and heifer animal units are 5,255. The total animal units allowed by the Tulare County special use permit are 13,419.8.

46. The average California Dairy had 825 milk cows in 2004.

47. A 1,000 pound dairy cow produces the waste of approximately 20 people. Thus, the Fred Schakel Dairy produces the equivalent waste of a city of approximately 275,000 people.

48. The Fred Schakel Dairy will occupy 256 acres. The dairy facility contains eight "freestall barns," that confine the milk cow herd. Each barn is 750 feet long and 102.5 feet wide

and equipped with a system that uses wastewater from the liquid manure storage lagoons to "flush" the manure from the freestall barns. The flush system captures 80% or more of the 5,832 milk cows' urine and feces and flushes the waste to the liquid manure storage lagoons.

49. Schakel will milk the cows three times per day in a centrally-located milk barn. The milk barn is equipped with a flush system similar to the freestall barns, except Schakel uses only fresh water to flush the urine and feces to the liquid manure storage lagoon.

50. The Fred Schakel Dairy will confine the support stock in open, dirt lined corrals equipped with a flush system for the concrete-lined feed alleys. The flush system captures 60% or more of the 5,058 support stocks' urine and feces and flushes the waste to the liquid manure storage lagoons.

51. The Fred Schakel Dairy has four solid separation lagoons where suspended solids in the liquified waste settle out of the waste stream. Each solid separation lagoon is 1,200 feet long and approximately 50 feet wide. The Fred Schakel Dairy has two liquid manure storage lagoons. One measures 400 feet wide and 1,000 feet long, while the other measures 400 feet wide and 650 feet long. The total volume of liquified waste storage is 10,024,848 cubic feet.

52. Liquified manure from the freestall barns and flushed alleys will enter the solid separation lagoons, from which a portion of manure solids will be removed. The two liquid manure storage lagoons will store the remaining liquified waste. Schakel will also contain manure contaminated wastewater and stormwater in the liquid manure storage lagoons. Schakel will compost solid manure removed from the liquified waste stream.

53. The Fred Schakel Dairy will use the liquified waste from the liquid manure storage lagoons as fertilizer for feed crops grown on 1,550 acres. Schakel intends to farm 404 acres with alfalfa, with the remaining 1,146 acres double-cropped with wheat and corn silage (wheat grown in winter, corn silage in summer). Schakel will store feed in the southeast corner of the dairy facility. Schakel intends to ship solid manure off-site for use as fertilizer at nearby farming operations.

54. Dairy cows emit VOC directly from their bodies' digestive systems. These emissions are referred to as "enteric" emissions.

55. Urine and feces ("manure") from dairy cows emit VOC immediately after excretion in the freestall barns. Decomposing manure also emits VOCs while in the solid separation lagoons and liquid manure storage lagoons, in corrals, and in solid manure composting piles.

56. There are approximately 700 different compounds that are defined as VOC. Dairy cows and their waste emit many of these compounds, including but not limited to amines, phenols, volatile fatty acids, and methanol. District Rule 1020 § 3.53.

57. Decomposing feed emits VOC as well, mostly ethanol.

58. Enteric emissions of VOC from cows in freestall barns and the milking barn, as well as emissions from freshly excreted urine and feces, are non-fugitive emissions. Such emissions can reasonably pass through a stack, chimney, vent, or other functionally equivalent opening in the freestall barns and milking barn structures. The milking barn is designed as a completely enclosed structure. The freestall barns have no walls, but other dairies and animal production facilities confine animals in fully-enclosed structures.

59. Emissions from decomposing manure in solid separation lagoons and liquid manure storage lagoons, as well as solid manure composting piles, are non-fugitive emissions. Such emissions can reasonably pass through a stack, chimney, vent, or other functionally equivalent opening. Dairies and other animal production facilities capture gaseous emissions from lagoons to power engines or burn the gas in a flare. Solid manure composting piles can reasonably be covered and emissions captured, or enclosed in a building.

## FIRST CAUSE OF ACTION

## FAILURE TO OBTAIN A NEW SOURCE REVIEW PERMIT

60. Plaintiff AIR realleges and incorporates by reference paragraphs 1-59.

61. The Fred Schakel Dairy is a stationary source within the meaning of the Clean Air Act and District Rule 2201.

62. Based on information and belief, including information in the public record, the Fred Schakel Dairy is a major stationary source because its potential to emit VOC exceeds 10 tons per year, the threshold for an extreme ozone nonattainment area. 42 U.S.C. § 7511a(e). The Fred Schakel Dairy is also a major stationary source under the current EPA-approved New

1  Source Review rule (District Rule 2201) because its potential to emit VOC exceeds 25 tons per
2  year.
3     63.   Schakel has violated, and continues to violate, Part D of Title I of the Clean Air Act
4  and District Rule 2201 because Schakel has begun actual construction of the Fred Schakel Dairy
5  without obtaining a New Source Review permit, has not installed Best Available Control
6  Technology (Lowest Achievable Emissions Rate), has not purchased emission "offsets" or
7  "emission reduction credits," and has not performed and an alternatives analysis.

## PRAYER FOR RELIEF

WHEREFORE, AIR respectfully requests that the Court grant the following relief:

A. Issue an order declaring that Schakel is in violation of the Clean Air Act and District Rule 2201 by not obtaining a New Source Review permit and complying with the attendant requirements, including installing Best Available Control Technology, purchasing "offsets" or "emission reduction credits," and the alternatives analysis.

B. Issue a preliminary and permanent injunction directing Schakel to stop all construction and/or operational activity until Schakel has obtained a major stationary source New Source Review permit and complied with all applicable requirements of Part D of Title I of the Clean Air Act and District Rule 2201.

C. Assess a civil penalty against Schakel of up to $27,500 per day for each day since Schakel began actual construction on or about January 6, 2004;

D. Order Schakel to take other appropriate actions to remedy, mitigate, or offset the harm to public health and the environment caused by the violations of the Act alleged above;

E. Retain jurisdiction over this matter until Schakel has complied with the orders of this Court;

F. Award AIR its costs of litigation, including reasonable attorney and expert witness fees, pursuant to § 304(d) of the Act, 42 U.S.C. § 7604(d); and

G. Provide such additional relief as the Court deems just and proper.

COMPLAINT                                11

Dated: June 1, 2005            Respectfully submitted,

CENTER ON RACE, POVERTY & THE
     ENVIRONMENT


/s/ Brent Newell
Brent Newell
Attorney for Plaintiff
Association of Irritated Residents