**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASSOCIATION OF IRRITATED RESIDENTS, an Unincorporated Association**<br><br>        **Plaintiff,**<br><br>   **v.**<br><br>**FRED SCHAKEL DAIRY, a California Proprietorship, FRED SCHAKEL, owner and operator, SCHAKEL FAMILY PARTNERSHIP, a California Limited Partnership, owner and operator, AG RESOURCES III, a California Limited Liability Company, owner and, SOUTH LAKES DAIRY, a California General Partnership, owner and operator,**<br><br>        **Defendants.** | **1:05-CV-00707 OWW SMS**<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS; DENYING DEFENDANTS' MOTION TO STAY WITHOUT PREJUDICE** |

### 1. INTRODUCTION

Defendants move to dismiss or, in the alternative, to stay the instant action brought by Plaintiffs Association of Irritated Residents' ("AIR") alleging violations of the federal Clean Air Act ("CAA"). (Doc. 87, Mot. To Dismiss, Filed August 4, 2004.) AIR opposes the motion. (Doc. 102-1, Filed August 18, 2006.)

### 2. PROCEDURAL BACKGROUND

AIR filed its initial complaint on June 1, 2005. (Doc. 1, Complaint.) AIR then filed a Third Amended Complaint ("TAC") on May 26, 2006. (Doc. 68, TAC.) On August 4, 2006, Defendants filed a motion to dismiss or in the alternative motion to stay

the action against them.  (Doc. 87, Mot. to Dis.)  AIR opposed the motion on August 18, 2006.  (Doc. 102, Pl.'s Opp. To Mot. To Dismiss.)  On August 22, 2006 Defendants filed a reply.  (Doc. 106, Def.'s Reply to Opp.)

### 3. FACTUAL BACKGROUND[1]

**A.  The Clean Air Act**

The general purpose of the CAA is to enhance the quality of the nation's air quality resources for the benefit of public health.  The CAA requires the United States Environmental Protection Agency ("EPA") to set National Ambient Air Quality Standards ("NAAQS") for certain pollutants including Ozone.  The CAA requires states to designate areas within its boundaries as "attainment" areas if the air quality meets the NAAQS for a particular criteria pollutant.  Areas where the air quality does not meet the NAAQS for a particular criteria pollutant are designated as "non attainment" areas for that pollutant.  Ozone non attainment areas are divided under the CAA as "marginal," "moderate," "serious," "severe," and "extreme" based on the severity of the ozone problem.  The San Joaquin Valley Air Basin has been designated as a serious non attainment area for the eight-hour ozone[2] NAAQS.

Non attainment areas are required to adopt state implementation plans ("SIP") to achieve the NAAQS by the applicable attainment date.  The CAA requires that a SIP shall

---

[1] Unless otherwise indicated, the statement of facts is obtained from the complaint.

[2] The eight-hour ozone standard is .08 parts per million measured over the daily maximum eight-hour average.

**2**

"require permits for the construction and operation of new or modified major stationary sources anywhere in the non attainment area." This preconstruction permit is a New Source Review ("NSR") permit.

The San Joaquin Valley Air Pollution Control District ("the Air District") adopted Rule 2201 to implement the NSR program. Rule 2201 requires a new or modified stationary source of air pollution or emissions unit to install Best Available Control Technology ("BACT") when the potential to emit volatile organic compounds ("VOC") exceed 2 pounds per day. The rule also requires that new or modified stationary sources purchase "offsets" or "emissions reduction credits" for VOC when the source's potential to emit exceeds 10 tons per year.

On January 1, 2004 California Senate Bill 700 removed a previously existing agricultural exemption for issuing NSR permits to agricultural resources. After 2004, agricultural sources were required to obtain NSR permits prior to construction of a stationary source facility.

**B.   Permitting and Construction of the Schakel Dairy**

On December 17, 2003, Defendants obtained approval for a special use permit from the Tulare County Planning Commission in order to construct the Fred Schakel Dairy ("the Dairy"). On December 18, 2003, Defendants recorded acceptance of the conditions of approval and agreed to comply with the conditions within the use permit. On January 6, 2004, Defendants obtained building permits for the Dairy and obtained a building permit for a manure separator pit on November 1, 2004. Defendants began actual construction on the Dairy on or after January 6, 2004.

3

However, Schakel did not obtain an Authority to Construct "ATC" permit pursuant to CAA 42 U.S.C. 7604(a)(1).  Nonetheless, Defendants constructed the Dairy to achieve the maximum operational capacity prescribed by the use permit.

Defendants have constructed, or are in the process of constructing, eight freestall barns, four manure solid separation lagoons, two liquid manure storage lagoons, corrals with flushed alleys for support stock, a milking barn, and feed storage facilities.  These components constitute the Dairy facility.  The Dairy also has at least one diesel internal combustion engine that is greater than 50 horsepower.  The Dairy facility will occupy 256 acres.  Fred Schakel and the Schakel Family Partnership own and operate the Dairy.

Each of the eight freestall barns is 750 feet long and 102.5 feet wide and is equipped with a system that uses wastewater from the liquid manure storage lagoons to flush the manure from the freestall barns.  The barns' flush system captures 80% or more of the 5,832 milk cows's urine and feces and flushes the waste to the liquid manure storage lagoons.  The milk cows will be milked three times per day in a centrally located milking barn, which is equipped with a flush system similar to the freestall barns except that fresh water is used to flush the cows's waste to the liquid manure storage lagoon.  The support stock will be confined in open, dirt lined corrals that are equipped with a flush system on concrete lined feed alleys.  The corrals's flush system captures 60% or more of the 5,058 support stock's urine and feces and flushes the waste to the liquid manure storage lagoons.

The dairy has four solid separation lagoons where suspended

**4**

solids in the liquified waste settle out of the waste stream. Each solid separation lagoon is 1,200 feet long and approximately 50 feet wide. The dairy has two liquid manure storage lagoons, one measuring 400 feet wide by 1,000 feet long and the other measuring 400 feet wide by 650 feet long. The total volume of liquified waste storage is 10,024,848 cubic feet. Liquified manure from the freestall barns and flushed alleys will enter the solid separation lagoons, from which a portion of the manure solids will be removed and composted, and the two liquid manure storage lagoons will store the remaining liquified waste. The liquid manure storage lagoons will also contain manure contaminated wastewater and stormwater. The dairy will use the liquified waste from the liquid manure storage lagoons as fertilizer for crops (alfalfa, wheat, and corn silage) grown on 1,550 acres. Feed will be stored at the southeast corner of the dairy facility, and solid manure will be shipped off-site for use as fertilizer at nearby farming operations.

**C.  Dairy Cows and VOC's**

Dairy cows emit VOC's directly from their digestive system, which are referred to as enteric emissions. VOC is emitted from urine and feces ("manure") from dairy cows immediately after excretion in the freestall barns, from decomposing manure in the solid separation lagoons and liquid manure storage lagoons, in corrals, and in solid manure composting piles. Of the various compounds defined as VOC under The Air District rules, dairy cows emit many defined VOC's, and decomposing feed also emits VOC's. The enteric emissions from cows in the freestall barns and the milking barn, emission from decomposing feed, and emissions from

5

decomposing manure in the manure lagoons and compost piles are non-fugitive emissions in that they can reasonably pass through a stack, chimney, vent, or other functionally equivalent opening. The freestall barns and milking barn, the liquid manure storage lagoons, the solid manure storage piles, and the feed storage unit each have the potential to emit VOC's at a rate greater than 2 lbs. per day and 10 tons per year.

The Fred Schakel Dairy is designed to contain a maximum 5,832 Holstein milk cows plus 5,058 support stock, as limited by the special use permit. A 1,000 pound cow produces the waste of approximately 20 people. The Fred Schakel Dairy produces the equivalent waste of a city of approximately 275,000 people.

**D.   Citizen Enforcement Action**

On June 1, 2006, AIR filed its complaint under citizen suit provisions 42 U.S.C. § 7604(a)(3)[3] and 42 U.S.C. § 7604(a)(1).[4] Also on June 1, 2006, AIR sent a 60-day notice letter for violations of emission standards or limitations in the federally approved SIP (District Rules 2010 and 2201). AIR alleges that Defendants have violated Air District Rule 2010 and Rule 2201,

---

[3] 42 U.S.C. § 7604(a)(3) provides: "Any person may commence a civil action on his own behalf against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under... part D of title I (relating to non attainment)."

[4] 42 U.S.C. § 7604(a)(1) provides: "Any person may commence a civil action on his own behalf against any person who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation..."

**6**

1  which have been approved by the EPA as part of California's SIP.
2  AIR alleges that Defendants have failed to obtain an ATC permit
3  from the Air District pursuant to Rule 2010, have not installed
4  BACT pursuant to Rule 2201 § 4.1, and have not purchased emission
5  reduction credits pursuant to Rule 2201 § 4.5.  AIR seeks
6  declaratory and injunctive relief, the imposition of civil fines,
7  and attorney's fees.

### 4. **REQUEST FOR JUDICIAL NOTICE**

AIR requests judicial notice of the August 17, 2006 letter from David Warner and Samir Sheikh, San Joaquin Unified Air Pollution Control District to Ryan Schakel of South Lakes Dairy. (Doc. 108-1, Pl.'s Request for Judicial Notice, Filed September 8, 2006.)  The letter provides Defendants with notice that the permit application is incomplete.  The letter is an official public record and its contents are not reasonably in dispute. It is therefore appropriately the subject of judicial notice. See Fed. R. Evid. 201(b)(2).

AIR's request for judicial notice is **GRANTED**.

### 5. **MOTION TO DISMISS**

The Ninth Circuit describes the doctrine of mootness as "the requirement that the controversy remain live even after the plaintiff demonstrates initial standing." *Skysign Intern., Inc. v. City and County of Honolulu,* 276 F.3d 1109, 1114 (9th Cir. 2002).  To establish mootness, a defendant must show that the court cannot order any effective relief. *San Francisco Baykeeper, Inc. V. Tosco Corporation, Diablo Services, Inc.*, 309 F.3d 1153, 1159 (9th Cir. 2002).  Defendants claiming mootness must satisfy a "heavy burden of persuasion."  *Id.*  Voluntary

**7**

cessation of challenged conduct moots a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Aderand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000).

### A. Defendants Have Failed to Meet Their Burden of Showing That The Court Cannot Order Any Effective Relief.

In their complaint, AIR alleges that Defendants have failed to obtain an ATC permit from the Air District pursuant to Rule 2010, have not installed BACT pursuant to Rule 2201 § 4.1, and have not purchased emission reduction credits pursuant to Rule 2201 § 4.5. AIR seeks declaratory and injunctive relief, the imposition of civil fines, and attorney's fees.

Defendants argue that AIR's action, which seeks injunctive relief, is moot because Defendants have applied and are currently in the process of getting approved for an ATC permit. Thus, the relief sought to be enjoined by AIR is no longer necessary because the Air District has taken administrative action, which will ensure that the NOV is remedied, will issue fines against defendants, and will bring litigation if Defendants fail to comply with the permit. Defendants argue that the action is moot because the Notice of Violations ("NOV") issued by the Air District contains the same violations as AIR's complaint and seeks the same remedies.[5] The NOV, however, does not include AIR's first cause of action as it does not provide notice of

---

[5] The NOV is a one page document that includes the following violations: "Dairy constructed without authority to construct, constructed prior to determination of BACT, constructed without Public Notice, and operated without permit to operate." (Doc. 96., Decl. of Rick McVaigh, Ex. A, Filed August 7, 2006.)

**8**

Defendants' failure to obtain a NSR permit as a major stationary source.  It also does not include Defendants' failure to obtain offsets as alleged in AIR's first and second causes of action. Nor does the NOV, provide a remedy for civil penalties under the CAA or attorneys' fees.

Civil penalties serve as an alternative to an injunction to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation. *San Francisco Baykeeper v. Tosco Corp.*, 309 F.3d 1153, 1159 (9th Cir. 2002)(*citing, Friends of the Earth v. Laidlaw*, 528 U.S. 167, 174 (2000). As is ordinarily the case with monetary relief, liability for civil penalties under the [CAA] attaches at the time the violations occur not at the time of the judgment. *Id.* That a defendant ceases illegal conduct following the commencement of suit ordinarily does not suffice to moot a case because civil penalties still serve as a deterrent to future violations. *Id.* at 1159-1160. Defendants in this case have not ceased operations and are continuing to operate the Dairy without a permit.

In *Baykeeper,* the Supreme Court reasoned that a new owner taking over the a facility does not make the "deterrent effect of civil penalties any less potent," because an imposition of civil penalties against a current owner for its pollution at the facility will demonstrate to any future owner that violations at this same facility will be costly. *Baykeeper*, 309 F.3d at 1160. It follows that, as in this case where the Dairy is still under Schekel's ownership and still in operation without a permit, a finding of mootness could allow repeated violations that would evade review, and would substantially weaken the ability of

citizen suits and civil penalties to police and deter the conduct forbidden by the CAA. *Id.* Defendants have not met their burden under the mootness doctrine.

Monetary penalties continue to fulfill their purpose after the issuance of a permit. *Ecological Rights Foundation v. Pacific Lumber Company,* 230 F.3d 1141, 1153 (9th Cir. 2000). Here, a permit has not been issued. The application is still pending. As of August 17, 2006, the application was not fully submitted as it was returned to Defendants as incomplete. It cannot be said that the court cannot order effective relief to AIR to redress Defendants' continuing violations.

### B. Even if Defendants Were to Be Issued a Permit, Defendants Still Have Failed To Show That Any Future Violations Could Not Reasonably Be Expected to Occur.

Defendants also argue that they voluntarily filed a permit application almost immediately after receiving the complaint and three or four weeks before the Air District sent the NOV. Defendants argue that they were not aware they required a permit and, since becoming aware, have paid the permit fees and fully cooperated with the Air District to obtain a permit. For these reasons, Defendants argue the case is moot.

It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. V. Laidlaw*, 528 U.S. 167, 189 (2000). A case becomes moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Id.* A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is

absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur. *Id.* at 190. There is no basis for believing that issuance of a new stricter permit makes future permit violations any less likely, deterrence any less necessary, or the deterrent effect of civil penalties any less potent. *Pacific Lumber Co.*, 230 F.3d at 1153.

*Laidlaw* involved a citizen suit against a hazardous waste incinerator facility. Shortly after receiving its permit the facility's discharge of pollutants began to exceed the limits set by the permit. *Laidlaw*, 528 U.S. at 176. As a result, Plaintiffs brought a citizen suit under the Clean Water Act ("CWA") against the facility alleging non compliance with the permit and seeking declaratory and injunctive relief as well as an award of civil penalties. *Id.* at 177. The Supreme Court granted certiorari to hear the case. After the Court of Appeal issued its decision but before the Court granted certiorari, the entire incinerator facility was permanently closed, dismantled and put up for sale, and all discharges from the facility permanently ceased. *Id.* at 179. The issue before the court was whether a defendant's compliance with its permit after the commencement of litigation does not moot claims for civil penalties under the act. *Id.* at 180.

The court reasoned that the only conceivable basis to find mootness in the case was *Laidlaw's* voluntary conduct – either its achievement of substantial compliance with the permit or its more recent shutdown of the facility. *Id.* at 189. In response to the Defendants' argument that the case was moot because the facility closed down, the Court stated that the closure of the

**11**

facility might moot the case only if one or the other of these events made it absolutely clear that the Defendants' permit violations could not reasonably be expected to recur. *Id.* at 193. The effect of both Defendants' compliance and the facility closure was a disputed factual matter. *Id.* at 193-194.

In this case, the Dairy has not ceased operation pending the issuance of the ATC permit. Further, the Defendants in *Laidlaw* had a permit to operate, yet Defendants in this case are currently operating the Dairy facility without the required permits. Defendants cannot guarantee that the required operating permits will in fact be issued or when they will be issued. The initial permit application was found to be incomplete by the Air District and returned to Defendants for correction. There are no facts to show whether the corrections to the permit application have been made. There is no indication as to whether BACT has been installed or when BACT will be installed on the facility. There is nothing in the record to show whether Defendants have given public notice of the Dairy's construction. Defendants violations are continuous and ongoing. The dispute between the parties is a real and active dispute. Under *Laidlaw* and its progeny, Defendants have not shown that future violations are not reasonably likely to occur.

Defendants motion to dismiss on mootness grounds is **DENIED**.

**C. Defendants' Ripeness Argument is Untimely**

Defendants also argue that this case is not ripe for review because disagreement over whether Defendants meet the terms of the permit is premature since no permit has been issued. This argument is flawed for two reasons. First, Defendants raise this

**12**

argument for the first time in their reply brief without giving the Plaintiffs an opportunity to respond.  Second, the issue in this dispute is not whether the terms of a permit have been met but whether Defendants have violated provisions of the CAA and Air District rules 2201 and 2010.  This question is purely one of CAA interpretation.  *See Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 852 (9th Cir. 2003).  A defendant is not required to "be in violation" of the Act at commencement of suit; rather the statute requires that a defendant be "alleged to be in violation." *Gwaltney v. Smithfield v. Chesapeak Bay Found.,* 484 U.S. 49, 64 (1987)(overruled on other grounds.)  In this case, Defendants admitted at oral argument heard on October 2, 2006 that they are operating the dairy without a permit in violation of the CAA. Even if Defendants have raised a ripeness argument in a timely fashion, the issues in this case are ripe for review.  *See, Envtl. Def. Ctr., Inc.,* 344 F.3d at 852.

### 6. **MOTION TO STAY**

Although a motion to stay is "not within the ambit" of the Federal Rules of Civil Procedure, "federal courts often consider these motions in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts."  5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360, at 438-39 (2d ed. 1990).  A stay is appropriate when a similar action is pending in another court (whether state or federal) or when arbitration may be appropriate.  *Hungerford*, 53 F.3d at 1016 (9th Cir. 1995)(upholding federal abstention where several state court claims were pending); *Privitera v. California Bd. of Med. Quality*

**13**

*Assurance*, 926 F.2d 890, 895-96 (9th Cir. 1990) (holding that a stay was not appropriate because there was no indication that duplicative state court litigation would be avoided or that an order compelling arbitration would avoid a decision on federal constitutional issues); *See also* Wright & Miller at 439-40.

A judge has wide discretion to use the inherent power of the federal court to promote judicial efficiency and prevent prejudice to the parties in granting or denying a motion to stay. *See* Wright & Miller at 441. In a declaratory judgment action a district court is authorized in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. *Wilton v. Seven Falls,* 515 U.S. 277, 288 (1995). In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *Id.* Where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. *Id.* at n.2.

Defendants assert the same arguments in their motion to stay as in their motion to dismiss. Defendants argue that they were not aware a permit was necessary for construction and operation of the dairy, that they are using their resources to get into compliance, and that the Air District intends to continue to prosecute the case and levy fines.

However, Defendants do not show how the pending administrative enforcement action at the Air District is duplicative to the proceedings in federal court.  Defendants do not argue that the federal court proceedings in any way depend on issues or facts to be determined in the administrative action. Defendants also do not argue that there is a potential for prejudice or conflict with the administrative proceedings in continuing the federal action.  Absent evidence that the federal action is duplicative or that it prejudices the parties' interest in the administrative enforcement action, the federal action must proceed.

Defendants' motion to stay is **DENIED WITHOUT PREJUDICE.**

### 7. CONCLUSION

Defendants' motion to dismiss is **DENIED.**

Defendants motion to stay is **DENIED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

Dated:   October 25, 2006                    /s/ Oliver W. Wanger
dd0l0                                   UNITED STATES DISTRICT JUDGE