1

2

3                    UNITED STATES DISTRICT COURT

4                    EASTERN DISTRICT OF CALIFORNIA

5

6    ASSOCIATION OF IRRITATED          1:05-CV-00707 OWW SMS
     RESIDENTS, an Unincorporated
7    Association
8                   Plaintiff,         MEMORANDUM DECISION AND ORDER
                                       GRANTING DEFENDANTS' MOTION TO
                                       FOR CERTIFICATION ON THE THIRD
9         v.                           CAUSE OF ACTION UNDER 28
                                       U.S.C. § 1292(b) AND GRANTING
10   FRED SCHAKEL DAIRY, a             DEFENDANTS' MOTION TO STAY
     California Proprietorship,        ENTIRE CASE (Doc. 281)
11   FRED SCHAKEL, owner and
     operator, SCHAKEL FAMILY
12   PARTNERSHIP, a California
     Limited Partnership, owner and
13   operator, AG RESOURCES III, a
     California Limited Liability
14   Company, owner and, SOUTH
     LAKES DAIRY, a California
15   General Partnership, owner and
     operator,
16
                    Defendants.
17

18

19                      1.   INTRODUCTION

20        Defendants move to certify under 28 U.S.C. § 1292(b) for

21   immediate appeal, the March 28, 2008 Order that denied

22   Defendants' motion to dismiss Plaintiff's Association of

23   Irritated Residents ("AIR") third cause of action alleging

24   Defendants violated the Clean Air Act ("CAA") section

25   112(g)(2)(B), 42 U.S.C. § 7412(g)(2)(B), because Defendants

26   constructed a major source of Hazardous Air Pollutants ("HAP")

27   and failed to obtain a Maximum Available Control Technology

28   ("MACT") determination for methanol emissions prior to initiating

                               1

construction of the Fred Schakel Dairy also known as the South Lakes Dairy (the "Dairy").  Defendants also seek a stay on two grounds.  (Doc. 282, Motion to Certify, Filed April 11, 2008) AIR opposes the motion.  (Doc. 310, Opposition, Filed May 16, 2008)  This matter was heard on June 2, 2008.

## 2.  PROCEDURAL BACKGROUND

AIR filed its initial complaint on June 1, 2005.  (Doc. 1) AIR filed its Fourth Amended Complaint on July 3, 2007 to add the third cause of action for violation of CAA section 112(g)(2)(B). (Doc. 153, Complaint)  On August 20, 2007, Defendants filed a Motion to Dismiss Plaintiff's third cause of action.  (Doc. 160, Motion to Dismiss)  Oral argument on Defendants Motion to Dismiss was heard on January 28, 2008.  On March 28, 2008, an order was entered denying Defendants' Motion to Dismiss Plaintiff's third cause of action.  (Doc. 277, March 28 Order)  On April 11, 2008, Defendants filed a Motion to Certify under 28 U.S.C. § 1292(b) for immediate appeal the March 28 Order and to stay proceedings of this suit until the Ninth Circuit decides the issue.  (Doc. 282)  On May 16, 2008, Plaintiff filed its Opposition to the Motion to Certify.  (Doc. 310)  On May 23, 2008, Defendants filed their reply to Plaintiff's Opposition.  (Doc. 317, Reply)

## 3.  FACTUAL BACKGROUND

The background facts for this entire suit are set forth in prior rulings, therefore only pertinent facts are repeated and amplified upon for the purposes of evaluating Defendants' Motion

1   to certify the CAA ruling for interlocutory appeal.[1]

2        **A.    Dairy Cows and Methanol**

3        The Dairy emits methanol from cows' enteric emissions,

4   freshly excreted manure, and decomposing feed stored at the

5   Dairy.  The human health risks from methanol exposure include a

6   decrease in gestation time, an increase in the number of required

7   Caesarian-section births, and, in prenatally exposed children,

8   instances of a severe wasting syndrome, concentration-related

9   delay in sensorimotor development and lower performance on an

10  infant intelligence test.  *See also American Forest and Paper*

11  *Association v. EPA*, 294 F.3d 113, 118-119 (D.D.C. 2002) (denying

12  petition for review of EPA decision that denied industry petition

13  to delist methanol, citing 66 Fed. Reg. 21929, 21932- 21935).

14       The Dairy is designed to house a maximum 5,832 Holstein milk

15  cows plus 5,058 support stock, as limited by the special use

16  permit.  A 1,000 pound cow produces waste equivalent to

17  approximately 20 people.  The Dairy produces the equivalent waste

18  of a city of approximately 275,000 people.

19       Defendants have constructed, or are in the process of

20  constructing, eight freestall barns, four manure solid separation

21  lagoons, two liquid manure storage lagoons, corrals with flushed

22  alleys for support stock, a milking barn, and feed storage

23  facilities.  These components comprise the Dairy facility and are

24  collectively a stationary source within the meaning of the CAA

25  and District Rule 2201.  These components also constitute the

26

27       [1] **The factual section is largely comprised of the facts**

28  **provided in the Plaintiff's Fourth Amended Complaint, Doc. 153.**

Dairy facility.  The Dairy also has at least one diesel internal combustion engine that is greater than 50 horsepower.  The Dairy facility will occupy 256 acres.  Fred Schakel and the Schakel Family Partnership own and operate the Dairy.

Each of the eight freestall barns is 750 feet long and 102.5 feet wide and is equipped with a system that uses wastewater from the liquid manure storage lagoons to flush the manure from the freestall barns.  The barns' flush system captures 80% or more of the 5,832 milk cows' urine and feces and flushes the waste to the liquid manure storage lagoons.  The milk cows will be milked three times per day in a centrally located milking barn, which is equipped with a flush system similar to the freestall barns except that fresh water is used to flush the cows' waste to the liquid manure storage lagoon.  The support stock will be confined in open, dirt lined corrals that are equipped with a flush system on concrete lined feed alleys.  The corrals's flush system captures 60% or more of the 5,058 support stock's urine and feces and flushes the waste to the liquid manure storage lagoons.

The Dairy has four solid separation lagoons where suspended solids in the liquified waste settle out of the waste stream. Each solid separation lagoon is 1,200 feet long and approximately 50 feet wide.  The Dairy has two liquid manure storage lagoons, one measuring 400 feet wide by 1,000 feet long and the other measuring 400 feet wide by 650 feet long.  The total volume of liquified waste storage is 10,024,848 cubic feet.  Liquified manure from the freestall barns and flushed alleys will enter the solid separation lagoons, from which a portion of the manure solids will be removed and composted, and the two liquid manure

**4**

storage lagoons will store the remaining liquified waste.   The liquid manure storage lagoons will also contain manure contaminated wastewater and stormwater.   The Dairy will use the liquified waste from the liquid manure storage lagoons as fertilizer for crops (alfalfa, wheat, and corn silage) grown on 1,550 acres.   Feed will be stored at the southeast corner of the Dairy facility, and solid manure will be shipped off-site for use as fertilizer at nearby farming operations.

### B.   The Clean Air Act

The general purpose of the CAA is to enhance the quality of the nation's air quality resources for the benefit of public health.   The CAA requires the United States Environmental Protection Agency ("EPA") to set National Ambient Air Quality Standards ("NAAQS") for certain pollutants including Ozone.   The CAA requires states to designate areas within its boundaries as "attainment" areas if the air quality meets the NAAQS for a particular criteria pollutant.   Areas where the air quality does not meet the NAAQS for a particular criteria pollutant are designated as "non attainment" areas for that pollutant.   Ozone non attainment areas are divided under the CAA as "marginal," "moderate," "serious," "severe," and "extreme" based on the severity of the ozone problem.   The San Joaquin Valley Air Basin has been designated as a "serious" non attainment area for the eight-hour ozone[2] NAAQS and an "extreme" non attainment area for the one-hour ozone NAAQS.

---

[2] The eight-hour ozone standard is .08 parts per million measured over the daily maximum eight-hour average.

1          **I. <u>California State Implementation Plan ("SIP")</u>**

2          **Non attainment areas are required to adopt state**

3    **implementation plans, or SIPS, to achieve the NAAQS by the**

4    **applicable attainment date.   The CAA specifies that a SIP shall**

5    **"require permits for the construction and operation of new or**

6    **modified major stationary sources anywhere in the non attainment**

7    **area."   This preconstruction permit is a New Source Review**

8    **("NSR") permit.**

9          **As part of its obligations under the California SIP program,**

10   **the District adopted Rule 2010 to implement the ATC permitting**

11   **program (permits before construction begins) and the Permit to**

12   **Operate permitting program ("PTO") (permits after construction)**

13   **and Rule 2201 to implement the NSR permitting program.   On**

14   **January 1, 2004 California Senate Bill 700 removed a previously**

15   **existing agricultural exemption for issuing NSR permits to**

16   **agricultural resources.   After 2004, agricultural sources were**

17   **required to obtain NSR permits prior to construction of a**

18   **stationary source facility.   Rule 2201 requires a new or modified**

19   **stationary source of air pollution or emissions unit to install**

20   **Best Available Control Technology ("BACT") when the potential to**

21   **emit volatile organic compounds ("VOC") exceed 2 pounds per day.**

22   **The rule also requires that new or modified stationary sources**

23   **purchase "offsets" or "emissions reduction credits" for VOC when**

24   **the source's potential to emit exceeds 10 tons per year.**

25   **On January 31, 2008 The Regional Administrator for the EPA**

26   **Region IX signed a proposed rule entitled "Revisions to the**

27   **California State Implementation Plan, San Joaquin Valley Unified**

28   **Air Pollution Control District" by which EPA proposes to correct**

                                    **6**

an alleged error it made in the May 2004 final approval of the
San Joaquin Valley Unified Air Pollution Control District's
portion of the California SIP and to approve the District's 2006
revisions to District Rules 2020 and 2201 explicitly limiting the
applicability of new source permitting requirements to certain
minor sources and limiting the applicability of offset
requirements for all minor sources consistent with criteria
idenitified in state law.  *See* Fed. Reg. 9260 (Feb. 20, 2008),
Revisions to the California State Implementation Plan, San
Joaquin Valley Unified Air Pollution Control District.

## II.  Section 112(g)(2)(B) MACT

Section 112 of the CAA requires EPA to set emission
standards for any HAP. *See* 42 U.S.C. § 7412(d).  In 1990,
Congress amended section 112 to establish a statutory list of
HAPs. *See* 42 U.S.C. § 7412(b)(1).  Methanol is included on that
list.  *Id.*  EPA must promulgate technology-based National
Emission Standards for Hazardous Air Pollutants ("NESHAPs") for
categories of sources that emit any HAP.  42 U.S.C. § 7412(d).
"These emission standards are to be based not on an assessment of
the risks posed by HAPs, but instead on the maximum achievable
control technology (MACT) for sources in each category." *Sierra
Club v. EPA*, 353 F.3d 976, 980 (D.D.C. 2004).  EPA has not yet
promulgated any NESHAPs for dairies or other animal feeding
operations, therefore the EPA or the permitting authority, the
District, must make a final and effective case-by-case
determination that the emissions from a constructed major source
will be controlled to a level no less than MACT.  The District
has implemented Rule 2550, Federally Mandated Preconstruction

**7**

Review for Major Sources of Air Toxics, "to provide an administrative mechanism for implementing the preconstruction review requirements of 40 C.F.R. part 63.40 through 63.44 [CAA Section 112(g) Regulations for Major Sources] at major air toxic sources."  San Joaquin Valley Air Pollution Control District, Regulation II - Permits, Rule 2550, Federally Mandated Preconstruction for Major Sources of Air Toxics (Adopted June 18, 1998).

> C.    Permitting and Construction of the Schakel Dairy

On December 17, 2003, Defendants obtained approval for a special use permit from the Tulare County Planning Commission in order to construct the Dairy.  On December 18, 2003, Defendants recorded acceptance of the conditions of approval of the special use permit and agreed to comply with the conditions within the permit.  On January 6, 2004, Defendants obtained building permits for the Dairy and obtained a building permit for a manure separator pit on November 1, 2004.  Defendants allegedly began actual construction on the Dairy on or after January 6, 2004, but prior to construction did not obtain an ATC permit nor a NSR permit.  Nonetheless, Defendants constructed the Dairy to achieve the maximum operational capacity prescribed by the special use permit.

The Dairy applied for an ATC permit from the District after construction of the Dairy.  On July 16, 2007, the District proposed to grant the ATC permit.  (Doc. 218, Declaration of Melissa Foster ("Foster Decl."), Exhibit B1)  The District, in its ATC Application Review, stated that it proposed to find the Dairy emitted less than 10 tons per year of methanol and was "not

a major air toxics source" and therefore did not necessitate a
MACT determination pursuant to CAA Section 112(g)(2)(B).  (Doc.
218, Foster Decl., Exhibit B2, p. 51)  On September 17, 2007, AIR
submitted comments to the District on the proposed permit stating
that the Dairy was a major source of methanol and thus subject to
a MACT determination under Section 112 of the CAA.  (Doc. 218,
Foster Decl., Exhibit A, p. 4 and 9)  The District, on December
4, 2007 approved the Dairy's ATC permit and made a finding that
the Dairy was not a major source of HAP under CAA Section 112,
applying its emission factors for dairies, and therefore the
Dairy did not have to comply with any MACT requirements.  (Doc.
218, Foster Decl., Exhibit A, p. 9)

D.   **Citizen Enforcement Action**

On June 1, 2006, AIR filed its complaint under citizen suit
provisions of the CAA, 42 U.S.C. § 7604(a)(3)[3] and 42 U.S.C. §
7604(a)(1).[4]  On April 19, 2007, AIR sent the required 60-day
notice letter for violations of section 112 of the CAA.  AIR
third claim alleges Defendants violated section 112(g)(2)(B) of
the CAA and 40 C.F.R. § 63.42(c) by constructing a major source

---

[3] **42 U.S.C. § 7604(a)(3) provides: "Any person may commence
a civil action on his own behalf against any person who proposes
to construct or constructs any new or modified major emitting
facility without a permit required under... part D of title I
(relating to non attainment)."**

[4] **42 U.S.C. § 7604(a)(1) provides: "Any person may commence
a civil action on his own behalf against any person who is
alleged to have violated (if there is evidence that the alleged
violation has been repeated) or to be in violation of (A) an
emission standard or limitation under this Act or (B) an order
issued by the Administrator or a State with respect to such a
standard or limitation..."**

of methanol, a listed HAP, without obtaining a MACT (Maximum Achievable Control Technology) determination from the District. AIR seeks declaratory and injunctive relief, the imposition of civil fines, and attorney's fees.

## 5.  MOTION TO CERTIFY

### A.  Legal Standard

The general rule is that an appellate court should not review a district court ruling until after entry of a final judgment.  *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *see* 28 U.S.C. § 1291.  There is an exception to this general rule:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals . . . may thereupon . . . permit an appeal . . . if application is made to it within ten days. . .

28 U.S.C. § 1292(b).  The district court has discretion under 28 U.S.C. § 1292(b) to certify a ruling for interlocutory appeal when it (1) "involves a controlling question of law;" (2) "there is substantial ground for difference of opinion;" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

If a district court grants certification, the Ninth Circuit Court of Appeals must still certify the appeal, an act which is also discretionary.  *See* 28 U.S.C. § 1292(b).  The party seeking interlocutory review "'has the burden of persuading the court of

appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978), *quoting Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972).  The standard to certify a question of law is high and a district court generally should not permit such an appeal where it "would prolong the litigation rather than advance its resolution." *Syufy Enter. v. Am. Multi-Cinema, Inc.*, 694 F. Supp. 725, 729 (N.D. Cal. 1988). Interlocutory appeals are "applied sparingly and only in exceptional cases." *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) ("Woodbury"); *see also United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (finding that the legislative history behind 28 U.S.C. § 1292(b) indicates that it is to be used in extraordinary cases only where such an appeal "might avoid protracted and expensive litigation").  The party seeking review bears the burden of showing that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475.  "In applying these standards, the court must weigh the asserted need for the proposed interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal appeals.'" *In re Heddendorf*, 263 F.2d 887, 889 (1st Cir. 1959).

   B.   <u>Analysis</u>

   On March 28, 2008, the Court issued an order denying Defendants' Motion to Dismiss the third cause of action that alleged the Dairy was a "major source" and failed to obtain a

MACT determination prior to construction of the Dairy as required under CAA's Section 112(g)(2)(B). (Doc. 277) Defendants moved to dismiss on several grounds, which are currently asserted as questions Defendants seek to certify for interlocutory appeal pursuant to 28 U.S.C. 1292(b). Defendants moved to dismiss on grounds of mootness because the District had recently issued an ATC permit which found that the Dairy was not a major source of HAPs and therefore it need not conduct a MACT determination. This presents a valid question of fact and law that raise exceptional issues. Defendants also moved to dismiss on fair notice grounds arguing that because it did not have the factual means to determine if it emitted methanol and, if it did, the amount it emitted, it lacked fair notice to comply with the law. Defendants argued that neither the EPA nor the District had developed emission factors for dairies to use in determining emissions of HAPs. Third, Defendants moved to dismiss on grounds that Plaintiff AIR had not exhausted the available administrative remedies with the District and the Court should in its discretion impose a judicial requirement of exhausting administrative remedies. Defendants argued that Plaintiff AIR had participated in the permitting process for the Dairy, provided comments on the proposed ATC permit to the District and it should appeal the District's final ATC permit decision before alleging this cause of action.[5]

## 1.   CONTROLLING ISSUE OF LAW

---

[5] Defendants also moved to dismiss on grounds that the EPA and the District had primary jurisdiction over these issues. Defendants have not moved to certify this issue.

12

The issue to be certified must involve a controlling issue of law.  An issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court."  *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983), *citing U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).  Defendants correctly assert that there is minimal guidance from the Ninth Circuit as to what constitutes a controlling question of law.  *See Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins.Co.*, No. CVF05-0736 AWI SMS, 2006 WL 2085244 (E.D.Cal. July 25, 2006).

Defendants contend the following questions are controlling questions of law to be certified for appeal: (1) Whether Defendants received fair notice?  Although "knowledge" existed that dairies caused methanol emissions, no specific emissions factors existed or were promulgated by either the EPA or the District to determine a source's methanol emissions in order to comply with requirements of the CAA; (2) Whether or not the case is moot because the District, the permitting agency, determined the Dairy was a not a "major source" under CAA Section 112 and therefore no MACT determination was required?; (3) Whether there should be a judicially imposed exhaustion requirement on AIR before bringing this third cause of action?  AIR, the complaining party, was participating in the administrative process at the district level and then chose to opt out of it, instead bringing this third cause of action.  (Doc. 317, Reply, 6:25-28 - 7:1-7).

Here, Defendants' success on appeal would materially affect the outcome of the third cause of action (and one third of the outcome of the entire litigation in the district court) , *e.g.* (1) a holding by the Ninth Circuit Court of Appeals that the District's determination that the Dairy was not a "major source" moots the third cause of action alleging that Defendants are subject to the requirements of Section 112(g)(2)(B) of the Clean Air Act and a MACT determination was required; (2) a holding that because Plaintiff AIR never fully exhausted or participated in the District's administrative process, Plaintiff is foreclosed from filing suit for failure to exhaust administrative remedies and the third cause of action is premature and (3) a holding that because there is a lack of notice of methanol issues by dairies and no specific emission factors were promulgated by the EPA or the District, the third cause of action is dismissed for failure to provide fair notice to Defendants. *In Re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982).

Here, Defendants assert that several defenses exist to defeat the third claim, specifically: they lacked fair notice; the District determined that the Dairy was not a "major source" thus the Dairy did not require a MACT determination; and Plaintiff failed to exhaust administrative remedies before the District, the permitting agency. *See Moore & B. Ward, 9 Moore's Federal Practice* ¶ 203.31[2] (2008) (collecting cases on interlocutory appeal motions granted for defense to determine if a defense will defeat a claim). If the order denying the motion to dismiss the third cause of action is reversed, it will eliminate the third cause of action and will aid in resolution of

**14**

the case, and courts have held that resolution of such issues would be "controlling".  *See Klinghoffer v. S.N.C. Achille Lauro*, **921 F.2d 21, 24 (2nd Cir. 1990).**

However, Defendants' fair notice argument presents fact questions that are unanswered and undeveloped and issues could potentially arise on appeal such as: whether Defendants attempted to make any calculations or whether they emitted more than ten tons per year of methanol prior to construction of the Dairy, whether the Dairy requested an applicability determination from the District prior to construction, or whether the Dairy found calculations were so esoteric that no reasonable dairy operator or owner with the assistance of a knowledgeable expert would be able to verify the emissions from its dairy.  (Doc. 277, March 28 Order, 36:17-24).  Defendants argue they are limiting the question for interlocutory appeal to the question of whether there was a lack of factual means to determine methanol emissions precisely because neither the EPA nor the District had made any emission factors available to dairies.  As the Seventh Circuit stated, a question of law under Section 1292(b) is a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" that "the court of appeals could decide quickly and cleanly without having to study the record[.]"  *Ahrenholz v. Board. of Trustees of the Univ. of Ill.*, **219 F.3d 674, 676 (7th Cir. 2000).**  Here, there is concern here that further factual development may be required to properly assess a fair notice claim which the Court noted in the March 28 Order.

On the administrative exhaustion question - whether a judicially imposed administrative exhaustion requirement should be in place, thus requiring AIR to exhaust the administrative remedies before the District- is a controlling issue of law.  If on appeal, a judicially imposed administrative exhaustion requirement is required, then the third cause of action would be stayed or dismissed pending the outcome of the administrative appeal process.[6]

As to the mootness argument, if on appeal, the Ninth Circuit determines that the third cause of action is moot based on the District's finding, as the permitting authority, that the Dairy is not a "major source" of HAPs, and therefore a MACT determination was not required under Section 112(g)(2)(B), then the third cause of action would be terminated on mootness grounds.  This is also properly a controlling issue of law.

## 2.   SUBSTANTIAL GROUND FOR DIFFERENCE

There must be substantial ground for difference of opinion on the issue.  Disagreement with the Court's ruling does not create a "substantial ground for difference"; the proponent of an appeal must make some greater showing.  *Kern-Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 667 (E.D. Cal. 1986) *aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir. 1987).

---

[6] It is unclear if an administrative appeal process is still available, if the appeal period has expired, or if AIR is foreclosed from appealing the ATC permit.  Neither party addressed this issue.

1  Defendants argue that because the issues are novel issues of

2  first impression and there is no case law, discussion, or

3  disposition involving a challenge under Section 112(g)(2)(B) of

4  the Clean Air Act, the March 28 Order is appropriate for

5  interlocutory appeal under Section 1292(b).

6  Defendants also argue, for the first time, that the Court

7  applied the wrong definition of "major source" in its analysis of

8  whether Plaintiff properly alleged a violation of the Section

9  112(g)(2)(B).  Defendants argue that the difference in

10 application of the definitions in the statute and those relied on

11 in the March 28 Order demonstrates that there are novel issues of

12 first impression appropriate for certification pursuant to 28

13 U.S.C. Section 1292(b).  The Court referenced and applied the

14 federal regulation definition of "construct a major source"

15 provided in 40 C.F.R. § 63.41:

16           (1) To fabricate, erect, or install at any greenfield
             site a stationary source or group of stationary sources
17           which is located within a contiguous area and under
             common control and which emits or has the potential to
18           emit 10 tons per year of any HAP's or 25 tons per year
             of any combination of HAP, or
19
20 Defendants now assert that the proper definition is that provided

   for "major source" under Section 112(a)(1):
21
22           The term "major source" means any stationary source or
             group of stationary sources located within a contiguous
23           area and under common control that emits or has the
             potential to emit considering controls, in the
24           aggregate, 10 tons per year or more of any hazardous
             air pollutant or 25 tons per year or more of any
25           combination of hazardous air pollutants.

26 42 U.S.C. § 7412(a)(1).

27 This argument is disingenuous, under both the statutory and

28 regulatory definitions the stationary source description is

                                17

1   identical and the limit of ten tons per year of any HAP or 25

2   times per year or more of any combination of HAPs is still the

3   limit.  Defendants' argument is frivolous.  Defendants refer to

4   other portions of the District's HAP analysis, but provide no

5   further analysis or argument on how using one definition over the

6   other makes any difference.  Such argument should have been

7   brought up in the motion to dismiss, although there is no

8   material difference between the two definitions.

9           The Air District, in its HAP analysis for the South
            Lakes Dairy, indicated that "[s]ince this Dairy is
10          complying with all of the [BACT] requirements and Rule
            4570 mitigation measures, many of the pollutants listed
11          above are expected to be reduced, however, no control
            is being applied to these factors at this time in order
12          to calculate the worst-case emissions." *See* Docket No.
            218, Declaration of Melissa A. Foster, at Exh. B2, p.
13          51.

14  (Doc. 317, Reply, 9:7-11).

15          Plaintiff correctly points out that Defendants' disagreement

16  with the Court's ruling is not sufficient to establish that a

17  substantial ground for difference of opinion exists.  *See Hansen*

18  *v. Schubert*, 459 F.Supp.2d 973, 1000 (E.D. Cal. 2006)("A party's

19  strong disagreement with the court's ruling is not sufficient for

20  there to be a 'substantial ground for difference'; the proponent

21  of an appeal must make some greater showing.")  Plaintiff cites

22  case law from district courts, holding that the absence of

23  authority, including a lack of cases on point, including

24  interpreting specific statutory language fails to create a

25  substantial ground for difference of opinion.  *See Barrett v.*

26  *Burt*, 250 F.Supp. 904, 907 (S.D. Iowa  1966); *United States ex*

27  *rel. Hollander v Clay*, 420 F. Supp. 853, 859 (D.D.C. 1976); *see*

28  *also Federal Deposit Ins. Corp. v First Nat. Bank*, 604 F. Supp.

616, 622 (E.D. Wis 1985) (Mere fact that there is a lack of authority on disputed issue does not necessarily establish substantial ground for difference of opinion required for interlocutory appeal under 28 U.S.C. § 1292(b)); *see also Wright, Miller & Cooper*, Federal Practice and Procedure, § 3930, p. 419-420.  However, the Second Circuit persuasively holds that substantial doubt may arise if the relevant issue if one of first impression.  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990).

Plaintiff disagrees that these are strictly first impression issue(s).  First, Plaintiff argues mootness is not an issue of first impression.  Whether a permitting authority can determine permit applicability to preclude a citizen suit for failure to obtain a permit is not an issue of first impression.  Plaintiff argues that the broader issue has been repeatedly addressed in this Circuit and others under the CAA and the CWA, as discussed in the March 28 Order.  *See Weiler v. Chatham Forest Products*, 392 F.3d 532, 537-539 (2nd Cir. 2004) (permitting authority decision holding that no Clean Air Act permit was required and thus did not preclude a citizen suit); *Association to Protect Hammersley, Eld, & Trotten Inlets v. Taylor Resources*, 299 F.3d 1007, 1012 (9th Cir. 2002) (permitting authority decision holding that no Clean Water Act permit was required and thus did not preclude a citizen suit).  However, in the context of Section 112(g)(2)(B) of the CAA, the Court was the first to address the question of whether a permitting authority's decision holding that a case-by-case MACT determination was not required-precludes a citizen suit.

1    Second, Plaintiff argues that the exhaustion of

2    administrative remedies is not a controlling question as a matter

3    of first impression.  Plaintiff contends there was no

4    administrative process that Plaintiff could exhaust because when

5    it filed the Complaint, the Dairy had not yet obtained a MACT

6    determination, even though construction began.  Plaintiff alleges

7    in its Complaint that the Dairy failed to obtain a MACT

8    determination *prior* to construction and the District had not yet

9    proposed to find or had not found that the Dairy was not a major

10   source of methanol because Defendants had not applied for an ATC

11   permit.  There was no opportunity to exhaust administrative

12   remedies.  However, there was an opportunity once Defendants had

13   filed for an ATC permit.  Second, Plaintiff AIR argues exhaustion

14   of administrative remedies in the context of the Clean Air Act

15   and Clean Water Act is not a matter of first impression, although

16   it is in the context of Section 112(g)(2)(B).  The case law cited

17   by Plaintiff does not reference any judicially imposed

18   administrative exhaustion requirement in the context of the CWA

19   and CAA, rather case law cited concerns statutory administrative

20   exhaustion requirements, not at issue here.  *See Association of*

21   *Irritated Resident v. C&R Vanderham Dairy*, 435 F. Supp. 2d 1078,

22   1087-1090 (E.D. Cal. 2006)(specifically not addressing judicially

23   imposed administrative exhaustion requirement); *Citizens for a*

24   *Better Environment v. Union Oil Co. of California*, 83 F.3d 1111,

25   1119 (9th Cir. 1996); *Susquehana Valley Alliance v. Three Mile*

26   *Island Nuclear Reactor*, 619 F.2d 231, 244 (3d Cir. 1980).  If "a

27   statute does not provide for exhaustion of administrative

28   remedies" it is in the discretion of the district court to

require exhaustion.  *Porter v. Board of Trustees of Manhattan Beach*,  307 F.3d 1064, 1070 (9th Cir. 2002); *see also Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1302 (9th Cir. 1992) (when a statute does not provide for exhaustion of administrative remedies, a trial court may require exhaustion in the exercise of its discretion. In such circumstances, our review is for abuse of discretion).

While generally a district court should refuse to certify matters that lie within the discretion of the court because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts generally should not interfere, reversal is possible and this should not control.  *See also Wright, Miller & Cooper*, Federal Practice and Procedure, § 3930, p. 429-431 (collecting cases on discretionary orders not certifiable, *but also* cases where it was appropriate).  Here, whether to impose an administrative exhaustion requirement was in the discretion of the trial court.

Third, Plaintiff argues that the defense of fair notice, is not a controlling question of law nor an issue of first impression.  This is, however, the first time a Court has applied the doctrine of fair notice to a Section 112(g)(2)(B) challenge in relation to a dairy emitting a HAP.[7]

---

[7] **The Court stated in the March 28 Order that "[i]t was the responsibility of the Dairy, who chose to operate in this industry and is knowledgeable that cows cause emissions that affect air quality to determine the type of emissions and the quantity of such emissions." (Doc. 277, March 28 Order, 36:10-13). The doctrine of fair notice applies to a party's**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    MATERIALLY LIKELY TO SPEED TERMINATION OF THE LITIGATION

An interlocutory appeal must be likely to materially speed the termination of the litigation.  This factor is linked to whether an issue of law is "controlling" in that the Court should consider the effect of a reversal by the court of appeals on the management of the case.  *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).  The controlling question does not need to dispose of the litigation, only advance its ultimate termination. However, the appeal must present a clear-cut question of law against a background of established facts.  *See 9 Moore & B. Ward, Moore's Federal Practice* ¶ 203.31[3] (2008); *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 407 (8th Cir. 1979) ("[T]he issue is such that the record must be more fully developed so that we can make a precise decision upon a precise record not an abstract answer to an abstract question. [citation].  A more complete factual and legal development in the district court would enable this court to give a better-reasoned and more sound response to the Sherman section 2 question.")

Here, if Defendants are successful on appeal and the Ninth Circuit rules in favor of Defendants (dismissing the third cause

---

knowledge of its legal obligations and does not encompass knowledge of factual data to determine compliance.  Defendants argued in their Motion to Dismiss, that they did not have the factual means, e.g. emission factors, to determine if the Dairy was a major source of HAPS, since neither the EPA nor the District had established emission factors and therefore the fair notice doctrine applies.

22

1   of action), it will obviate the need for extensive expert

2   testimony regarding the amount of methanol emissions of dairies

3   and it would alleviate the need for additional experts,

4   investigation and reporting requested by Plaintiff.  In addition,

5   it would eliminate trial time of trying the third cause of action

6   in the Complaint, and accordingly conserve judicial resources.

7         The issue is not dispositive of the entire case against

8   Defendants because the first and second causes of action are

9   distinct and do not involve questions under Section 112(g)(2)(B).

10  Even if the third cause of action is dismissed for lack of fair

11  notice, or mootness or failure to exhaust administrative

12  remedies, the first cause of action for failure to obtain a

13  permit required by the Clean Air Act, and the second claim for

14  violation of the SIP will remain.  However, the Ninth Circuit has

15  not limited 1292(b) motions to actions where the question is

16  dispositive of the entire action: "But we do not hold that a

17  question brought here on interlocutory appeal must be dispositive

18  of the [entire] lawsuit in order to be regarded as controlling."

19  *U.S. v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959).

20        Defendants also argue that other similarly situated dairies

21  will benefit from the resolution of these issues on interlocutory

22  appeal, because it will provide guidance as to whether dairies

23  are in compliance with the laws.  The opportunity to achieve

24  appellate resolution of an issue important to other similarly

25  situated dairies can provide an additional reason for

26  certification; although it is not a requirement.  *See Klinghoffer*

27  *v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990); *see*

28  *also* Wright, Miller & Cooper, Federal Practice and Procedure, §

3930, p. 425.  At oral argument, Defendants' counsel noted that no other dairies are currently required to purchase offsets under this stationary source rule because the District is not permitted by state law to issue such offsets.  6/2 Hr'g Tr.

The issues are ones of first impression in the Ninth Circuit.  These issues present a controlling question of law as to which there is substantial ground for difference of opinion.  An immediate appeal from the order may materially advance the ultimate termination of the third cause of action, and while the pragmatic considerations of further delay in this three-year old case, count against certification,[8] limiting certification to the third cause of action which was recently added to the suit, overcomes this concern.

Defendants' motion for certification under 28 U.S.C. § 1292(b) for immediate appeal of the March 28, 2008 Order is GRANTED.

## 6.  MOTION TO STAY

Defendants move to stay the action on two grounds.  First, Defendants request a stay of further proceedings pending resolution of the interlocutory appeal.  Second, Defendants seek

---

[8] Courts have also addressed "pragmatic consideration[s]," the "procedural and substantive status of the case with respect to the progress or completion of discovery, the disposition of pretrial motions, the extent of the parties' preparation for trial..."  *Federal Deposit Ins. v. First National Bank Of Waukesha*, 604 F.Supp. 616, 620 (E.D. Wisc. 1985) (citing cases where an interlocutory appeal was denied because the appellate court could not decide complex issues on merits before scheduled trial date, and an interlocutory appeal would exacerbate delay in disposition of the litigation, or an appeal would not shorten time needed for completion of lawsuit).

a stay of the suit based on the stay granted in *Association of Irritated Residents v. C&R Vanderham Dairy* case. *See* Case No. 1:05cv01593 OWW/SMS ("*Vanderham*"), Doc. 192, Order Staying Action for all Purposes Pending EPA Rulemaking Process and Subsequent Judicial Review, entered March 11, 2008.

### A.   Stay Pending Resolution of Interlocutory Appeal

Although the filing of an interlocutory appeal does not automatically stay proceedings in the district court, the district court has broad discretion to decide whether a stay is appropriate to "promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (quotations and citations omitted). *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

Here, a resolution of the interlocutory appeal regarding the third cause of action in favor of Defendants would alter the direction of the current proceedings, and might prompt the filing of an amended complaint.  It would be a waste of judicial and party resources to proceed with the other claims while the appeal is pending.  Accordingly, Defendants motion for a stay pending resolution of the interlocutory appeal is GRANTED.

### B.   Stay Pending Completion of the Pending Rulemaking.

Defendants also assert that the entire case should be stayed pending resolution of the pending EPA Rulemaking entitled

**"Revisions to the California State Implementation Plan, San Joaquin Valley Unified Air Pollution Control District."  A stay of the entire case was issued on this basis in *Vanderham*.**

**EPA's Notice of the proposed SIP Revision addresses whether the California agricultural exemptions in SB 700 apply to agricultural sources within the San Joaquin Valley Unified Air Pollution Control District, or the District.  If so, the EPA proposes to "correct" the "error" it made in its May 2004 final approval of revisions to the District's portion of the SIP.  And EPA proposes to approve the District's 2006 revisions to District Rules 2020 and 2201.**

> **Under section 110(k)(2) of the Clean Air Act, we are proposing to approve the District's 2006 revisions to Rules 2020 an 2201 to conform the rules to State law by explicitly <u>exempting certain small or minor agricultural sources from permitting requirements</u> and by <u>exempting all minor agricultural sources from offset requirements</u> until certain criteria are met.**

**73 Fed. Reg. 9260, 9265 (Feb. 20, 2008) (emphasis added).  If the EPA takes final action as proposed, that may affect portions of Plaintiff's claims.[9]**

---

[9]    **The proposed revision would add the following paragraph (6.20) to SIP Rule 2020:**

> **This paragraph conforms District permit requirements to State law by explicitly exempting agricultural sources to the extent such sources are exempt pursuant to CH&SC section 42301.16...The net effect of this section is that all agricultural sources with actual emissions or a potential to emit at or above a major source applicability threshold are required to obtain a District permit pursuant to CH&SC section 43201.16(a). Agricultural sources with actual emissions at or above 50 percent of a major source applicability threshold are require to obtain a District permit, unless the**

1    Plaintiff denies that a stay is warranted in light of the

2   EPA's proposed revisions to the California SIP, but also argues

3   if a stay is contemplated it should only apply to Plaintiff's

4   second cause of action, as EPA's proposed rule has no effect on

5   the first and third claims.  A review of the causes of action in

6   *Vanderham* and this case is informative here.

7    In *Vanderham*, Plaintiff brought only one cause of action

8   against the Vanderham dairy, titled "Violations of the California

9   State Implementation Plan," alleging (a) violations of Rule 2010,

10  for failing to obtain an ATC permit prior to construction of

11  dairy; (b) violations of Rule 2201, section 4.1 for failing to

12  install BACT; and (c) violations of Rule 2201, section 4.5, for

13  failing to purchase "offsets" or "emission reduction credits."

14

15   _____

16                District makes the findings specified by subsection (b)
              [of 42301.16].  No permits are required for
17           agricultural sources with actual emissions of less than
             50 percent of the major source applicability
18           thresholds, unless the District makes the findings
             specified in subsection (c) [of 42301.16]...
19

20  The proposed revision would also add paragraph 4.6.9 to SIP rule
21  2201:

22                This paragraph exempts new or modified agricultural
              sources from offset requirements to the extent provided
23           by CH&SC section 42301.18c), unless the offsets are
             required by federal CAA requirements...  Section
24           42301.18c) prohibits districts from requiring
             agricultural sources to obtain offsets if emission
25           reductions from such sources would not meet the
             criteria for real, permanent, quantifiable, and
26           enforceable emissions reductions.
27

28  73 Fed. Reg. At 9265.

                                27

1  (Doc. 58, 1:05cv01593 OWW SMS, filed October 21, 2006) The entire

2  suit was stayed.

3      Plaintiff's second cause of action in this case, titled

4  "Violations of the California State Implementation Plan," alleges

5  (a) violations of Rule 2010, for failing to obtain an ATC permit

6  prior to construction of the Dairy; (b) violations of Rule 2201,

7  section 4.1 for failing to install Best Available Control

8  Technology on various structures and facilities; (c) violations

9  of Rule 2201, section 4.5 for failing to purchase emission

10  reduction credits; and (d) violations of Rule 2201, section

11  4.15.1 for failing to conduct an alternative siting analysis.

12  (Doc. 153, ¶¶ 75-91.)  Plaintiff conceded at oral argument that

13  the EPA proposed rule may affect one of the three claims in the

14  second cause of action, the claim regarding offsets.  Plaintiff

15  also argued that the other claims in the second cause of action

16  would not be affected by the proposed EPA changes, nor would the

17  first cause of action be affected by these proposed changes.

18      Plaintiff's first cause of action is titled "Failure to

19  Obtain a Permit Required by Part D of Title I of the Clean Air

20  Act (42 U.S.C. § 7604(a)(3))."  This section of the CAA requires

21  permits for new or modified major stationary sources of air

22  pollution.  It is alleged that the Dairy is a major stationary

23  source because of its potential to emit VOC and NOx exceeds 10

24  tons per year (the threshold for an extreme ozone nonattainment

25  area) and is a major stationary source under the current EPA-

26  approved New Source Review rule (District Rule 2201) because its

27  potential to emit VOC and NOx exceeds 25 tons per year.  (*Id.* at

28  ¶¶69-72.)  The relevant permit has been obtained and Plaintiff

argued unopposed at argument that the case could move forward on the penalty phase.  The first cause of action however, also alleges that the Dairy violated the CAA and continues to do so, because it began "construction of a major stationary source without obtaining a New Source Review permit, has not installed Best Available Control Technology... <u>and has not purchased emission "offsets" or "emission reduction credits</u>, and performed an alternative analysis."  (*Id.* at ¶ 73 (emphasis added).)  This language arguably implicates the "offset" issue in the first cause of action as well.

The third cause of action, which alleges that Defendants failed to obtain a MACT determination prior to construction in violation of 42 U.S.C. § 7694(a)(1), would not be affected by any changed rulemaking regarding offsets or emission reduction credits.

Although Plaintiffs first and third causes of action will likely not be affected by the ongoing EPA rulemaking process, piecemealing claims in this litigation will waste party and judicial resources and will require duplication of efforts to resolve closely related issues on separate occasions. Defendants' request for a stay of the entire case is GRANTED.

CONCLUSION

For the reasons stated above,

Defendants' motion for certification under 28 U.S.C. § 1292(b) for immediate appeal of the third cause of action, subject of the March 28 Order, is GRANTED.

29

1   **Defendants' request to stay proceedings related to the third**
2   **cause is GRANTED pending a determination from the Ninth Circuit**
3   **Court of Appeals as to whether it will accept certification.**

4   **Defendants' motion to stay the entire case pending**
5   **completion of the EPA rulemaking is GRANTED.   Whether the case**
6   **will be stayed pending judicial review of the final rulemaking**
7   **will be determined at a later date upon a noticed motion by the**
8   **parties.**

9   **The parties shall file a joint status report with the court**
10  **when the Court of Appeals decides whether the certify the**
11  **interlocutory appeal __and__ a final rule has been issued by the EPA,**
12  **or in six months, whichever occurs first.**

IT IS SO ORDERED.

**Dated:    July 22, 2008**               _____ **/s/ Oliver W. Wanger** _____
                                        UNITED STATES DISTRICT JUDGE